IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-695

 No. COA 20-268

 Filed 21 December 2021

 Wake County, No. 17CRS209941

 STATE OF NORTH CAROLINA

 v.

 WILLIAM JOSEPH BARBER, Defendant.

 Appeal by Defendant from judgment entered 6 June 2019 by Judge Stephan R.

 Futrell in Wake County Superior Court. Heard in the Court of Appeals 11 August

 2021.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General
 Matthew Tulchin, for the State.

 C. Scott Holmes, Irving Joyner, and Malcolm Ray. Hunter, Jr., for the
 Defendant.

 DILLON, Judge.

¶1 Defendant was convicted in superior court of second-degree trespass by a jury

 for refusing to leave the office area of the North Carolina General Assembly when

 told by security personnel to do so. We conclude that the superior court had

 jurisdiction over the matter and that Defendant received a fair trial, free from

 reversible error.

 I. Background
 STATE V. BARBER

 2021-NCCOA-695

 Opinion of the Court

¶2 Defendant was charged with second-degree trespass, a misdemeanor, for

 refusing to leave the General Assembly complex when told to do so by an officer.

¶3 The State’s evidence tended to show as follows:

¶4 Defendant led a group of approximately fifty (50) people through the General

 Assembly office complex, protesting the inaction by our legislature to implement

 certain health care policy. The protest, which included “call and response” chants led

 by Defendant, triggered complaints from legislative staff.

¶5 Under the rules governing the legislative complex, visitors “may not disturb or

 act in a manner that will imminently disturb the General Assembly[.]”1 Disruptive

 visitors are told to stop their behavior, and if they refuse, they are asked to leave

 immediately. The rules warn, “A knowing violation of these rules is a Class 1

 misdemeanor under G.S. 120-32.1(b).”2

¶6 In accordance with these rules, the General Assembly’s Police Chief repeatedly

 told Defendant and the group he was leading to lower their noise level, or they would

 be subject to arrest. The Police Chief then specifically told Defendant to stop leading

 the chants and leave. Defendant, however, did not leave, and the protest continued

 in a manner that proceeded to disturb the work of legislative staff. Accordingly,

 1 Rules of State Legislative Building and Legislative Office Building Adopted by the

 Legislative Service Commission, Restated 15 May 2014, at 2.
 2 Id. at 6.
 STATE V. BARBER

 2021-NCCOA-695

 Opinion of the Court

 Defendant was charged with trespass.

¶7 Defendant was never tried in our district court division. Rather, he was tried,

 in the first instance, by a jury in our superior court division on the sole charge of

 second-degree trespass. The jury returned a guilty verdict, and the trial court entered

 judgment accordingly. Defendant timely appealed.

 II. Analysis

¶8 Defendant makes several arguments on appeal, which we address in turn.

 A. Subject Matter Jurisdiction of the Superior Court

¶9 Defendant argues that our superior court division lacked jurisdiction to try him

 for a misdemeanor charge because the charging document upon which the State

 proceeded was not an indictment returned by the grand jury, but rather a

 misdemeanor statement of charges drawn up by the prosecutor.

¶ 10 A defendant may properly raise the issue of subject matter jurisdiction at any

 time, even for the first time on appeal. In re T.R.P., 360 N.C. 588, 595, 636 S.E.2d

 787, 793 (2006). Challenges based on subject matter jurisdiction are reviewed de

 novo. In re A.L.L., 376 N.C. 99, 101, 852 S.E.2d 1, 4 (2020).

¶ 11 Here, Defendant was indicted by the grand jury for second-degree trespass.

 Specifically, the grand jury issued a “presentment” directing the prosecutor to

 investigate the matter after hearing testimony from the legislative officer who had

 cited Defendant. A month later, the prosecutor sought the indictment, which was
 STATE V. BARBER

 2021-NCCOA-695

 Opinion of the Court

 returned by the grand jury and served on Defendant.

¶ 12 However, on the eve of trial, the prosecutor prepared and served on Defendant

 a different charging document, called a “misdemeanor statement of charges.” This

 document charged Defendant with essentially the same crime as had been charged

 in the indictment. The State proceeded with the trespassing prosecution pursuant to

 the statement of charges document rather than the indictment.

¶ 13 Defendant makes a compelling argument on appeal that the procedure

 followed by the prosecutor was improper, an argument that may have been a winning

 one based on the case law cited. However, we must take note of a decision from our

 Supreme Court handed down last year, the reasoning of which compels us to conclude

 that Defendant was properly tried in our superior court division.

¶ 14 Our district court division generally has “exclusive, original jurisdiction” to try

 misdemeanors. N.C. Gen. Stat. § 7A-272(a) (2017). Our superior court division

 generally hears misdemeanor prosecution, in the exercise of a defendant’s right to a

 trial de novo, only after a defendant has been found guilty of the charge in the district

 court division. Id. § 7A-271(a)(5).

¶ 15 However, there are limited situations where our superior court division may

 hear a misdemeanor charge without first being a trial in the district court. For

 instance, relevant to our analysis here, a defendant may be tried for a misdemeanor

 in superior court in the first instance “[w]hen the charge is initiated by presentment,”
 STATE V. BARBER

 2021-NCCOA-695

 Opinion of the Court

 Id. § 7A-721(a)(2), which is followed by an indictment.

 A presentment is a written accusation by a grand jury,
 made on its own motion and filed with a superior court,
 charging a person, or two or more persons jointly, with the
 commission of one or more criminal offenses. A
 presentment does not institute criminal proceedings
 against any person, but the district attorney is obligated to
 investigate the factual background of every presentment
 returned in his district and to submit bills of indictment to
 the grand jury dealing with the subject matter of any
 presentments when it is appropriate to do so.

 N.C. Gen. Stat. § 15A-641(c) (2017).

¶ 16 As stated above, this procedure—presentment by the grand jury followed by

 an indictment—was followed here. However, the prosecutor then decided to proceed

 pursuant to an entirely different charging document, the misdemeanor statement of

 charges. There is statutory authority to proceed on a misdemeanor charge in superior

 court when hearing the matter de novo from a conviction in district court. However,

 our superior court does not have original jurisdiction to try a misdemeanor charged

 in a statement of charges. See N.C. Gen. Stat. § 7A-271(a) (outlining superior court’s

 jurisdiction to hear misdemeanor cases).

¶ 17 The question before us is whether it was fatal that the prosecution proceeded

 pursuant to the statement of charges, where the superior court otherwise had

 jurisdiction to proceed on the indictment that followed the presentment.

¶ 18 Defendant contends that our Court’s jurisprudence, specifically State v. Wall,
 STATE V. BARBER

 2021-NCCOA-695

 Opinion of the Court

 235 N.C. App. 196, 760 S.E.2d 386 (2014), compels us to conclude that the superior

 court lacked jurisdiction to proceed against Defendant for second-degree trespassing

 pursuant to a “statement of charges,” notwithstanding that Defendant was properly

 indicted by a grand jury for the same offense. The reasoning in Wall does seem to

 support Defendant’s position as explained below. Defendant’s argument perhaps

 would have been a winning one until last year. However, we conclude that this issue

 is controlled by the reasoning of our Supreme Court’s more recent opinion in State v.

 Capps, 374 N.C. 621, 843 S.E.2d 167 (2020).

¶ 19 Our 2014 decision in Wall relies on State v. Killian, 61 N.C. App. 155, 300

 S.E.2d 257 (1983). In Killian, the defendant was tried in district court pursuant to a

 pleading, known as a “warrant,” that charged him with a certain misdemeanor. He

 appealed his conviction to the superior court for a trial de novo. Since the superior

 court was not exercising original jurisdiction (as the defendant had already been

 convicted in our district court division), it was appropriate for our superior court to

 proceed pursuant to the original warrant. Id. at 158, 300 S.E.2d at 259. However,

 rather than trying him for the same charge, the prosecutor in Killian proceeded

 pursuant to a “statement of charges” pleading that charged the defendant for a

 different crime than the one alleged in the warrant. Id. at 155, 300 S.E.2d at 258.

¶ 20 Our Court in Killian held that the superior court had no jurisdiction to proceed

 on the statement of charges, as it alleged a crime different from the crime alleged in
 STATE V. BARBER

 2021-NCCOA-695

 Opinion of the Court

 the original warrant:

 “Because [the crime charged] is a misdemeanor, the district
 court had exclusive, original jurisdiction of the new offense.
 G.S. 7A-272(a). Until defendant was tried and convicted in
 district court and appealed to superior court for trial de
 novo, the superior court had no jurisdiction [and] is
 derivative and arises only upon an appeal from a conviction
 of the misdemeanor in district court[.] The superior court
 thus had no jurisdiction to try defendant for the new
 offense alleged in the statement [of charges], and the
 conviction accordingly must be reversed.

 Id. at 158, 300 S.E.2d at 259 (citation and quotation omitted).

¶ 21 Thirty-one years later, in 2014, our Court decided Wall, the case relied upon

 by Defendant. Wall involved procedural facts similar to Killian, except in Wall, the

 prosecution issued a statement of charges prior to the trial de novo that charged the

 same crime (resisting a public officer) as charged in the magistrate’s order, the

 charging document in the district court trial. Wall, 235 N.C. App. at 199, 760 S.E.2d

 at 388. Specifically, the magistrate’s order used in the district court prosecution

 charged the defendant with “resisting a public officer, § 14-223”; and the statement

 of charges used in the trial de novo also charged the defendant with violating “§ 14-

 223.” Id. at 198, 760 S.E.2d at 387.

¶ 22 The defendant in Wall argued that “the superior court lacked subject matter

 jurisdiction to try her on the misdemeanor statement of charges filed in superior court

 . . . because defendant was tried and convicted on a magistrate’s order in district
 STATE V. BARBER

 2021-NCCOA-695

 Opinion of the Court

 court[,]” notwithstanding both documents alleged the same crime. Id. 198, 760 S.E.2d

 at 387. We agreed with the defendant’s argument, specifically holding that this

 procedure was improper because:

 “[T]he State cannot “amend” a magistrate’s order by filing
 a misdemeanor statement of charges. Doing so would
 change the nature of the original pleading entirely.

 ***

 Thus, the superior court had no jurisdiction to try
 defendant for the new offense alleged in the statement of
 charges. Defendant’s conviction must be vacated.

 Id. at 199-200, 760 S.E.2d at 388.

¶ 23 Here, Defendant argues that the reasoning in Wall controls. His argument is

 as follows: While there may have been an appropriate charging document that would

 have conferred jurisdiction in the superior court division, any jurisdiction was lost

 when the prosecutor proceeded under a different charging document disallowed by

 our General Statutes. And jurisdiction cannot be found by treating the statement of

 charges as a mere amendment to the appropriate charging document.

¶ 24 We, however, must take note of a case decided by our Supreme Court last year,

 a case cited by neither party. In State v. Capps, 374 N.C. 621, 843 S.E.2d 167 (2020),

 our Supreme Court essentially determined that a statement of charges may be

 treated as an amendment to the appropriate charging document.

¶ 25 In Capps, the defendant was convicted of a misdemeanor in district court
 STATE V. BARBER

 2021-NCCOA-695

 Opinion of the Court

 pursuant to a warrant, a charging document allowed in district court prosecutions.

 Id. at 622, 843 S.E.2d at 168. While the matter was before the superior court in a

 trial de novo, the prosecutor filed a statement of charges that parroted the allegations

 contained in the original warrant, with one minor exception—the name of the victim

 whose property was stolen was changed from “Loves Truck Stop” to “Love’s Travel

 Stops & Country Stores, Inc.” Id. at 623, 843 S.E.2d at 168.

¶ 26 The defendant appealed, “arguing for the first time that the superior court

 lacked jurisdiction to try the misdemeanor[s] under the statement of charges.” Id.

 624, 843 S.E.2d at 169. Our Supreme Court, however, held that proceeding under

 the statement of charges was appropriate under two different theories. The theory

 relevant to this present matter is that the statement of charges was essentially “an

 amendment in substance” to the warrant. Id. at 627, 843 S.E.2d at 170. And since

 our General Statutes allowed for the warrant to be amended by reciting the proper

 name of the corporate victim rather than its trade name, the “amendment” was

 appropriate, notwithstanding that the amendment was drafted on a “statement of

 charges” form. Id. at 627, 843 S.E.2d at 170.

¶ 27 Of course, it could be argued that Capps is inapposite to the present case

 because, though our General Statutes allow for warrants to be amended, they

 specifically prohibit indictments from being amended by the prosecutor. See N.C.

 Gen. Stat. § 15A-923(e) (“A bill of indictment may not be amended.”). However, our
 STATE V. BARBER

 2021-NCCOA-695

 Opinion of the Court

 Supreme Court has “interpreted prohibited amendments to mean any change in the

 indictment which would substantially alter the charge set forth in the indictment.”

 State v. Abraham, 338 N.C. 315, 340, 451 S.E.2d 131, 144 (1994) (internal marks

 omitted). Accordingly, amendments to indictments that do not “substantially alter

 the charge” are permissible. State v. Brinson, 337 N.C. 764, 767, 448 S.E.2d 822, 824

 (1994). This is because a minor change does not defeat the purpose of the indictment

 “to inform a party so that he may learn with reasonable certainty the nature of the

 crime of which he is accused[.]” State v. Coker, 312 N.C. 432, 437, 323 S.E.2d 343,

 347 (1984).

¶ 28 Following the logic of Capps, we must conclude that the superior court properly

 had jurisdiction to proceed on the misdemeanor trespass charge. The presentment

 and subsequent indictment alleged that Defendant remained on “the premises [of]

 the North Carolina General Assembly, in the Legislative Building located at 16 W.

 Jones St., Raleigh[.]” The statement of charges contained similar language except

 that it described the location as “the premises of the State of North Carolina, the

 Legislative Building located at 16 W. Jones St. Raleigh[.]” As the premises in each is

 described as “the Legislative Building” with the address of “16 W. Jones St., Raleigh,”

 we do not see how the change from “the premises of the North Carolina General

 Assembly” to “the premises of the State of North Carolina” constituted a substantial

 alteration. Defendant was not denied his right to be informed of the nature of the
 STATE V. BARBER

 2021-NCCOA-695

 Opinion of the Court

 crime for which he was accused.

¶ 29 In sum, the superior court had original jurisdiction to proceed with the

 misdemeanor charge where the matter was initiated by a presentment followed by

 an indictment. N.C. Gen. Stat. § 7A-271(a)(2). The statement of charges drafted by

 the prosecutor may be treated as an amendment to the original charging document

 rather than a new charging document. Capps, 374 N.C. at 627, 843 S.E.2d at 170.

 An amendment to an indictment is permissible so long as the amendment does not

 substantially change the nature of the charge as alleged in the indictment. Brinson,

 337 N.C. at 767, 448 S.E.2d at 824. The amendment to the indictment in this case,

 as stated in the statement of charges, did not substantially alter the nature of the

 charge against Defendant. Therefore, the amendment was permitted, and the

 superior court had jurisdiction to proceed.

 B. Free Speech

¶ 30 Defendant argues that his First Amendment rights were implicated, and

 therefore, the trial court erred by disallowing certain evidence that went to prove that

 assertion. We disagree.

¶ 31 This issue concerns whether free speech protections are implicated when a

 defendant is charged with trespass for violating viewpoint neutral, conduct-based

 rules. “To resolve this issue, we must first decide whether [defendant exhibited]

 speech protected by the First Amendment, for, if it is not, we need go no further.”
 STATE V. BARBER

 2021-NCCOA-695

 Opinion of the Court

 Cornelius v. NAACP Legal Def. & Educ. Fund, 473 U.S. 788, 797 (1985)

¶ 32 The right to free speech and assembly, though “fundamental rights” are “not

 in their nature absolute.” State v. Dobbins, 277 N.C. 484, 498, 457 (1971) (quoting

 Whitney v. California, 274 U.S. 357, 373 (1927) (Brandeis J, concurring)). “[I]t has

 never been deemed an abridgment of freedom of speech or press to make a course of

 conduct illegal merely because the conduct was in part initiated, evidenced, or carried

 out by means of language, either spoken, written, or printed.” State v. Wiggins, 272

 N.C.147, 159, 158 S.E.2d 37, 46 (1967) (quoting Giboney v. Empire Storage & Ice Co.,

 336 U.S. 490, 502 (1949)).

¶ 33 We conclude that the First Amendment is not implicated in the conduct for

 which Defendant was charged. This is not a case about free speech—it is a case about

 loud speech. Defendant was not expelled from the General Assembly for the content

 of his words. He was removed for their volume.

¶ 34 Indeed, the text of the General Assembly’s visitor rules does not speak to the

 nature or content of a visitor’s speech; they are solely conduct based. Specifically, the

 rules disallow “visitors who disturb” and prohibit unruly behavior, such as making

 noises that impair others’ ability to engage in conversation or impeding others’

 movement.

¶ 35 Further, even if Defendant’s First Amendment rights were implicated, we

 conclude that his rights were not violated as a matter of law. The visitor rules at
 STATE V. BARBER

 2021-NCCOA-695

 Opinion of the Court

 issue are reasonable “time, place, and manner” restrictions.

¶ 36 The United States Supreme Court has recognized that “[t]he First Amendment

 does not guarantee access to property simply because it is owned or controlled by the

 government,” Postal Service v. Council of Greenburgh Civic Ass’ns, 453 U.S. 114, 129

 (1981), and that “[t]he State, no less than a private owner of property, has power to

 preserve the property under its control for the use to which it is lawfully dedicated.”

 Adderley v. Florida, 385 U.S. 39, 47 (1966).

¶ 37 Moreover, “[n]othing in the Constitution requires the Government freely to

 grant access to all who wish to exercise their right to free speech on every type of

 Government property without regard to the nature of the property or to the

 disruption that might be caused by the speaker’s activities.” Cornelius, 473 U.S. 788

 at 799-800.

¶ 38 The United States Supreme Court has recognized that government property is

 either a public forum, which can be limited or unlimited in nature, or a non-public

 forum. Id. at 799-800.

¶ 39 We hold that the interior of the General Assembly is not an unlimited public

 forum. Although important speech is conducted within the building, the building is

 not a quintessential community venue, such as a public street, sidewalk, or park. See

 United States v. Grace, 461 U.S. 171, 180 (1983) (holding that while the interior of

 the Supreme Court building may not be a public forum, the sidewalk abutting the
 STATE V. BARBER

 2021-NCCOA-695

 Opinion of the Court

 courthouse is a public forum). The interior of the General Assembly complex is

 comparable to a courthouse in this regard. Certainly, while citizens are free to visit

 the General Assembly and communicate with members and staff, the government

 may prohibit loud, boisterous conduct on a content-neutral basis that would affect the

 ability of members and staff to carry on legislative functions.

¶ 40 Also comparable to the General Assembly, we note that the inside of the United

 States Capitol has been held to be a non-public forum, see Bynum v. United States

 Capitol Police Bd., 93 F. Supp. 2d 50, 56, 200 (D. D.C. 2000). But even if our General

 Assembly building can be characterized as a limited public forum, the General

 Assembly would still be allowed to enforce rules limiting the volume of visitor speech

 in the office areas where staff carry on the work of our legislative branch. See Brown

 v. Louisiana, 383 U.S. 131, 142 (1966) (holding that civil rights protestors have the

 right to hold a silent vigil in a racially segregated library but may not make a speech

 in the quiet portions of the library).

¶ 41 Our own Supreme Court has recognized that content-neutral time, place, or

 manner restrictions “are subjected to a less demanding but still rigorous form of

 intermediate scrutiny,” where “[t]he government must prove that they are narrowly

 tailored to serve a significant governmental interest, and that they leave open ample

 alternative channels for communication of the information.” State v. Bishop, 368 N.C.

 869, 874-875, 787 S.E.2d 814, 818, (2016) (citing McCullen v. Coakley, 573 U.S. 464,
 STATE V. BARBER

 2021-NCCOA-695

 Opinion of the Court

 486 (2014)).

¶ 42 We conclude that the legislative rules serve a significant interest of limiting

 loud disruptions and that Defendant has various other channels to make his concerns

 known and to otherwise engage in protests of legislative policies. Accordingly, we

 conclude that Defendant’s First Amendment rights were not violated by the

 application of the legislative rules that support his conviction.3

 C. Jury Instructions

¶ 43 Finally, Defendant argues that a portion of the jury instructions was

 misleading. Specifically, Defendant challenges the instruction describing one of the

 elements of second-degree trespass as that Defendant entered or remained on the

 premises of another “without authorization.” N.C.P.I.-Crim. 214.31A (2017). Though

 a standard jury instruction, Defendant argues that the word “authorization” should

 have been replaced with “legal right.”

¶ 44 Assuming arguendo that the court erred by not making this minor alteration,

 we conclude that the error had no effect on the outcome of the trial. See State v.

 3 Defendant makes other arguments concerning the implication of his First
 Amendment rights. For instance, Defendant contends that the legislative rules are
 unconstitutional “as applied” in his case; that the jury should have been instructed on the
 “constitutional” elements of trespass as applied in his case; and that the prosecution violated
 his rights under our state constitution to instruct his representatives. However, as we have
 concluded that Defendant’s conviction stems from his conduct (unrelated to the content of his
 speech) and that his First Amendment rights were not otherwise violated, we conclude that
 Defendant has failed to show reversible error with respect to these other arguments.
 STATE V. BARBER

 2021-NCCOA-695

 Opinion of the Court

 Green, 258 N.C. App. 87, 93, 811 S.E.2d 666, 670 (2018) (“An error in jury instructions

 is prejudicial when there is a reasonable possibility that, had the error in question

 not been committed, a different result would have been reached[.]”).

 III. Conclusion

¶ 45 We conclude that the superior court had jurisdiction over this matter and that

 Defendant had a fair trial, free from reversible error.

 NO ERROR.

 Judge CARPENTER concurs.

 Judge INMAN concurs in part and concurs in the result in part.
 No. COA20-268 – State v. Barber

 INMAN, Judge, concurring in part and concurring in the result in part.

¶ 46 I concur fully in the majority’s holdings that: (1) the misdemeanor statement

 of charges did not deprive the trial court of jurisdiction in light of State v. Capps, 374

 N.C. 621, 843 S.E.2d 167 (2020); and (2) Defendant has not shown prejudicial error

 in the trial court’s denial of his request to alter the jury instruction on trespass. I

 also concur in the majority’s ultimate holding that Defendant’s conviction is not

 subject to reversal on First Amendment grounds, but I write separately because I

 believe resolution of that issue requires a different analysis.

 I. Conduct v. Expression

¶ 47 The majority treats its determination that the Building Rule4 regulates

 conduct as dispositive of Defendant’s First Amendment argument. But a law or

 regulation that principally concerns itself with conduct may also burden speech and

 be subject to First Amendment protections. See, e.g., Hest Techs., Inc. v. State ex rel.

 Perdue, 366 N.C. 289, 297, 749 S.E.2d 429, 435 (2012) (“[O]ur determination that the

 primary target of this regulation is conduct rather than speech does not neatly end

 the inquiry. Because regulations that legitimately restrict conduct may still unduly

 burden speech rights, we must carefully evaluate the plaintiffs’ assertions that the

 speech at issue here implicates the First Amendment.”). Such incidental burdens are

 4 The specific rule at issue is Rule III.C.2. of the Rules of State Legislative Building

 and Legislative Office Building Adopted by the Legislative Services Commission, Restated
 15 May 2014. For clarity and ease of reading, I refer to Rule III.C.2. as the “Building Rule”
 and the entire set of rules as the “Building Rules.”
 STATE V. BARBER

 2021-NCCOA-695

 INMAN, J., concurring in part and concurring in the result in part

 subject to judicial review under the test announced in United States v. O’Brien, 391

 U.S. 367, 20 L. Ed. 2d 672 (1968):

 [A] government regulation is sufficiently justified if it is
 within the constitutional power of the Government; if it
 furthers an important or substantial governmental
 interest; if the governmental interest is unrelated to the
 suppression of free expression; and if the incidental
 restriction on alleged First Amendment freedoms is no
 greater than is essential to the furtherance of that interest.

 Id. at 377, 20 L. Ed. 2d at 680. See also Hest, 366 N.C. at 300, 749 S.E.2d at 437

 (noting that “courts have traditionally applied the test from . . . O’Brien” to

 regulations aimed at conduct that incidentally burden speech). And the O’Brien test

 is, at bottom, largely indistinguishable from the time, place, and manner restriction

 test applicable to content-neutral restrictions on speech. See Clark v. Cmty. for

 Creative Non-Violence, 468 U.S. 288, 298, 82 L. Ed. 2d 221, 230 (1984) (noting that

 the O’Brien test “in the last analysis is little, if any, different from the standard

 applied to time, place, or manner restrictions”).

¶ 48 Applying O’Brien to this case, whether the Building Rule is characterized as

 primarily regulating conduct that incidentally burdens speech (as intimated by the

 majority) or as a time, place, and manner restriction (as contended by Defendant), it

 is subject to similar intermediate scrutiny under the First Amendment. See, e.g.,

 Nixon v. Shrink Mo. Gov’t PAC, 528 U.S. 377, 386, 145 L. Ed. 2d 886, 897 (2000)
 STATE V. BARBER

 2021-NCCOA-695

 INMAN, J., concurring in part and concurring in the result in part

 (describing the O’Brien test as “intermediate scrutiny” alongside “the similar

 standard applicable to merely time, place, and manner restrictions”).

¶ 49 In my view, the Building Rule places at least an incidental burden on speech,

 as it explicitly includes “singing, clapping, shouting, [and] playing instruments” as

 “nonexclusive examples of behaviors that may disturb the General Assembly.” If a

 city noise ordinance that “forbids deliberately noisy or diversionary activity that

 disrupts or is about to disrupt normal school activities,” Grayned v. City of Rockford,

 408 U.S. 104, 110-11, 33 L. Ed. 2d 222, 229 (1972), is subject to intermediate First

 Amendment scrutiny as a time, place, and manner restriction on expression, id. at

 115-17, 33 L. Ed. 2d at 231-33, it is hard to discern how the Building Rule is not also

 a time, place, and manner restriction subject to the same level of First Amendment

 review.

 II. Forum Analysis

¶ 50 That the Building Rule at issue here involves a content-neutral time, place,

 and manner restriction also leads me to conclude that the hallway in which

 Defendant was arrested is a designated public forum, if not a traditional public

 forum.5 To identify a designated public forum, we must “look[] to the policy and

 5 The majority holds that the hallway where Defendant was arrested is not an
 “unlimited public forum.” I understand the majority to mean that the hallway is not a
 “traditional public forum” or a “designated public forum” as those terms are used in First
 STATE V. BARBER

 2021-NCCOA-695

 INMAN, J., concurring in part and concurring in the result in part

 practice of the government to ascertain whether it intended to designate a place not

 traditionally open to assembly and debate as a public forum,” while also considering

 “the nature of the property and its compatibility with expressive activity.” Cornelius

 v. NAACP Legal Defense Educ. Fund, Inc., 473 U.S. 788, 802, 87 L. Ed. 2d 567, 580

 (1985).

¶ 51 As the Building Rules are written, visitors are allowed to speak in the hallway

 where Defendant was arrested about anything and to anyone; the only limitation is

 that the speech fit within content-neutral restrictions tracking the intermediate

 scrutiny test applicable to public fora.6 In other words, the General Assembly allows,

 by policy, any and all speech that falls within a content-neutral time, place, and

 manner restriction—the precise type of restriction permitted in either a traditional

 or designated public forum. The Chief of the North Carolina General Assembly Police

 Department testified:

 [W]hen I’m at various protest rallies, advocacy days, the
 content of what people are saying has no bearing on my
 actions. . . . What you’re saying, what you’re advocating

 Amendment caselaw. See Willis v. Town of Marshall, N.C., 426 F.3d 251, 264 n.6 (4th Cir.
 2005) (“In the context of a First Amendment claim, the phrase ‘public forum’ is a term of art,
 as are ‘limited public forum,’ designated ‘public forum,’ and ‘non-public forum.’ ” (citations
 omitted)); see also Perry Educ. Ass’n v. Perry Local Educators’ Ass’n, 460 U.S. 37, 45-46, 74
 L. Ed. 2d 794, 804-05 (1983) (defining and distinguishing between traditional public fora and
 designated public fora).
 6 Building Rule III.C.4. also prohibits signs on handsticks, signs affixed to the

 Legislative Complex, and signs that are used to disturb the General Assembly. This
 regulation, too, is a content-neutral regulation on the manner of speech.
 STATE V. BARBER

 2021-NCCOA-695

 INMAN, J., concurring in part and concurring in the result in part

 for or what you’re protesting against, or what you’re
 protesting for has absolutely no bearing on my decisions or
 my directions or my instructions to my officers, and it
 would be improper and illegal if it did.

¶ 52 Nor does open public discussion conflict with the nature of the State

 Legislative Building. If it did, the General Assembly presumably would have chosen

 a more restrictive policy than a content-neutral time, place, and manner restriction

 when, “[t]o make visitors feel welcome and at the same time to make it possible for

 the General Assembly to function effectively,” it adopted the Building Rules. Indeed,

 the State Legislative Building may be the most appropriate location for open public

 discourse in light of both these aims. See Reilly v. Noel, 384 F. Supp. 741, 747 (D.R.I.

 1974) (“[T]here is no more appropriate place for citizens to express their views on

 issues of social and political significance and to communicate their feelings to their

 elected representatives than at the State Capitol.” (citations omitted)); Women Strike

 for Peace v. Morton, 472 F.2d 1273, 1287 (D.C. Cir. 1972) (“There is an unmistakable

 symbolic significance in demonstrating [as close as possible to the seat of government]

 which, while not easily quantifiable, is of undoubted importance in the constitutional

 balance.”); City of Madison, Joint Sch. Dist. No. 8 v. Wis. Emp’t Relations Comm’n,

 429 U.S. 167, 178-79, 50 L. Ed. 2d 376, 387 (1976) (Brennan, J., concurring)

 (“[W]hen . . . a government body has either by its own decision or under statutory

 command, determined to open its decisionmaking processes to public view and
 STATE V. BARBER

 2021-NCCOA-695

 INMAN, J., concurring in part and concurring in the result in part

 participation . . . the state body has created a public forum dedicated to the

 expression of views by the general public.”). Based on stated policy, practice, and the

 State Legislative Building’s purposes, Defendant has shown that the office hallway7

 has been “opened for use by the public as a place for expressive activity,” Perry Educ.

 Ass’n, 460 U.S. at 45, 74 L. Ed. 2d at 805, and, to the extent it was not traditionally

 a public forum,8 it has been intentionally designated as such. In short, I would hold

 that Defendant had every right to engage in protected speech in the hallway of the

 Legislative Building subject to reasonable time, place, and manner restrictions that

 comport with the First Amendment.

 III. As-Applied Challenge and Jury Instruction on Constitutional Elements
 of Trespass

¶ 53 Though I diverge from the majority’s analysis of Defendant’s First Amendment

 argument, I concur in its ultimate conclusion that Defendant’s constitutional rights

 were not violated by the trespass conviction. The Building Rule Defendant violated

 is a reasonable time, place, and manner restriction that survives intermediate

 7 This analysis applies to the hallways and other areas of the Legislative Building that

 are generally accessible to the public during business hours; this appeal does not involve the
 offices of General Assembly members and their staff.
 8 “In general, the grounds and buildings of state and federal capitol complexes and

 similar buildings have consistently been held to be public fora.” ACT-UP v. Walp, 755 F.
 Supp. 1281, 1287 (M.D. Pa. 1991) (citations omitted).
 STATE V. BARBER

 2021-NCCOA-695

 INMAN, J., concurring in part and concurring in the result in part

 scrutiny.9 It is not meaningfully different from the content-neutral noise ordinance

 that was upheld as a reasonable time, place, and manner restriction by the United

 States Supreme Court in Grayned, 408 U.S. at 116-21, 33 L. Ed. 2d at 231-35, and

 Defendant has not argued to this Court that the Building Rule fails to meet this

 standard.10 Defendant’s as-applied argument fails.

¶ 54 I also conclude that Defendant’s prosecution did not violate his rights under

 Article I, Section 12 of the North Carolina Constitution “to instruct [his]

 representatives, and to apply to the General Assembly for redress of grievances.” To

 the extent that this argument is encompassed by Defendant’s underlying First

 Amendment challenge, it fails alongside that as-applied claim. See State v. Frinks,

 284 N.C. 472, 485, 201 S.E.2d 858, 866-67 (1974) (holding a defendant’s First

 Amendment and Article I, Section 12 challenges to his prosecution for violating a

 parade ordinance failed because the ordinance complied with the First Amendment).

 Defendant cites no North Carolina caselaw interpreting or applying Article I, Section

 12 of the North Carolina Constitution. We have held that the right to instruct

 9 Because I believe the hallway at issue to be a public forum and the Building Rule to

 be a time, place, and manner restriction subject to intermediate scrutiny, I do not join in the
 majority’s analysis treating the hallway as a limited public forum. See Pleasant Grove City,
 Utah v. Summum, 555 U.S. 460, 470, 172 L. Ed. 2d 853, 863 (2009) (holding that regulations
 in limited public forums are constitutional if they “are reasonable and viewpoint neutral”).
 10 Defendant conceded at oral argument that a rule prohibiting disruptions to allow

 persons to work is a reasonable time, place, and manner restriction.
 STATE V. BARBER

 2021-NCCOA-695

 INMAN, J., concurring in part and concurring in the result in part

“reflect[s] a right of the people to ‘teach’ or ‘advise’ their representatives, . . . [and]

protects the ability of the people to contact their elected representatives and convey

their views about the decisions those representatives are tasked with making on their

behalf.” Common Cause v. Forest, 269 N.C. App. 387, 392-93, 838 S.E.2d 668, 673

(2020). But I am not convinced that Defendant’s rights under Article I, Section 12

were violated because he was prohibited from exercising his petition rights in his

preferred manner. For example, Defendant could have: (1) continued to instruct and

petition the General Assembly within the reasonable time, place, and manner

restrictions imposed by the Building Rules, including by lowering the volume of his

voice and urging his supporters to do the same; (2) distributed a letter, petition, or

other writing to legislative offices by mail, facsimile, or email; (3) addressed

representatives personally in another public setting outside the Legislative Building;

(4) contacted legislative offices by phone; or (5) hired a lobbyist to speak with

legislators.11 Cf. Clark, 468 U.S. at 293, 82 L. Ed. 2d at 227 (holding reasonable time,

place, and manner restrictions are constitutional “provided that they are justified

 11 Room numbers, telephone numbers, and email addresses for all members of the

General Assembly are accessible to the public on the General Assembly’s website. Contact
Info, North Carolina General Assembly, available at
https://www.ncleg.gov/About/ContactInfo (last visited December 12, 2021). Registered
lobbyists may be identified through the Secretary of State’s website. North Carolina
Secretary of State Lobbying Compliance Search, North Carolina Secretary of State, available
at https://www.sosnc.gov/online_services/search/by_title/_lobbying (last visited December 12,
2021).
 STATE V. BARBER

 2021-NCCOA-695

 INMAN, J., concurring in part and concurring in the result in part

 without reference to the content of the regulated speech, that they are narrowly

 tailored to serve a significant governmental interest, and that they leave open ample

 alternative channels for communication of the information” (emphasis added)); Pell v.

 Procunier¸ 417 U.S. 817, 827-28, 41 L. Ed. 2d 495, 504-05 (1974) (holding inmates’

 First Amendment rights, including the right to petition the government for a redress

 of grievances, was not violated by a reasonable time, place, and manner restriction

 “in light of the alternative channels of communication that are open to prison

 inmates”). Absent caselaw applying Article I, Section 12 in the manner requested by

 Defendant and expanding it to invalidate regulations that are constitutional under

 the First Amendment, I agree with the majority’s determination that Defendant’s as-

 applied challenge under the North Carolina Constitution fails.

¶ 55 Defendant also argues that the trial court erred in failing to instruct the jury

 to find necessary “constitutional facts” on the “constitutional elements” of the

 trespass charge, namely, whether Defendant violated a reasonable time, place, and

 manner restriction by demonstrating so loudly as to disrupt the work of the General

 Assembly within the meaning of the Building Rule. But Defendant’s trial counsel did

 not argue that such an instruction was constitutionally required. And while trial

 counsel did request an amendment to the jury instruction on trespass to distinguish

 that Defendant must be found to have been in the Legislative Building “without legal

 right” instead of “without authorization” to be guilty, he did not ground this argument
 STATE V. BARBER

 2021-NCCOA-695

 INMAN, J., concurring in part and concurring in the result in part

 in First Amendment or other constitutional concerns. Defendant’s constitutional jury

 instruction argument—raised for the first time on appeal—is not preserved for review

 given trial counsel’s failure to distinctly argue those grounds below. See Marketplace

 Antique Mall, Inc. v. Lewis, 163 N.C. App. 596, 601, 594 S.E.2d 121, 125 (2004) (“As

 a review of the transcript reveals that plaintiffs did not object to the jury instructions

 on the bases contended in their brief, these issues were not preserved for appeal and

 are therefore not properly before this Court.” (citation omitted)); N.C. R. App. P.

 10(a)(2) (2021) (“A party may not make any portion of the jury charge or omission

 therefrom the basis of an issue presented on appeal unless the party objects thereto

 before the jury retires to consider its verdict, stating distinctly that to which objection

 is made and the grounds of the objection.”).

¶ 56 Although Defendant did preserve his challenge to the jury instruction on state

 law grounds, I concur with the majority’s conclusion that he has failed to show

 prejudice. Defendant’s trial counsel argued the factual question of whether

 Defendant violated the Building Rule to the jury despite his unsuccessful request to

 alter the jury instruction on trespass. He repeatedly contended in closing that the

 State had failed to show Defendant was loud enough to cause a disturbance in

 violation of the Building Rule. Likewise, the prosecutor argued in closing that the

 “without authorization” element of trespass was satisfied because “there are

 rules . . . that govern what behavior is allowed in that building when a member of the
 STATE V. BARBER

 2021-NCCOA-695

 INMAN, J., concurring in part and concurring in the result in part

 general public enters. He violated those rules, and at the point that he violated those

 rules he lost his authority to stay there.”

¶ 57 For the reasons stated herein, I concur in the result reached by the majority

 regarding Defendant’s First Amendment and related arguments. I concur fully in

 the remainder of the majority opinion.